**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

UNITED STATES OF AMERICA

vs.                                                    Case No.:     3:20-cr-25-J-34PDB

D.K. JOHNSON

_____/

**ORDER**

This case is before the Court on Defendant D.K. Johnson's pro se "Emergency Motion to Amend DK Johnson's Sentencing for Compelling Circumstances," (Doc. 39, Emergency Motion), which the Court construes as an Emergency Motion for Compassionate Release under 18 U.S.C. § 3582(c)(1)(A). Johnson requests compassionate release because of his age, myriad health conditions, and the Covid-19 pandemic.

Johnson, an 80-year-old retired veteran, was arrested on February 5, 2020, and charged with possession of a firearm by a convicted felon. (Doc. 4, Minute Entry of Initial Appearance; Doc. 14, Indictment).[1] He pleaded guilty to the charge pursuant to a written plea agreement. (Doc. 24, Plea Agreement). The Court sentenced Johnson to a term of eight months of imprisonment, to be followed by a three-year term of supervised release, six months of which were to be served on home confinement. (Doc. 37, Judgment). At

_____

[1]     In 1992, Johnson was convicted in the United States District Court for the Eastern District of New York of one count of attempted murder, two counts of assault, and one count of using a firearm during a crime of violence. (See Doc. 24, Plea Agreement at 16; Doc. 28, Presentence Investigation Report [PSR] at ¶ 31). The convictions were based on the attempted shooting of his supervisor in November 1989, while Johnson was working at a Navy yard in Brooklyn. PSR at ¶ 31. The district court sentenced Johnson to a total term of 10 years' imprisonment, from which he was released in 2000. (Id.). According to the PSR, Johnson has no criminal convictions other than that case and the instant case.

1

Johnson's request, the Court recommended that the Bureau of Prisons (BOP) place him at the facility in Butner, North Carolina, and that the BOP expedite Johnson's designation. Judgment at 2. However, Johnson has been detained at the Baker County Detention Center the entire time. According to the BOP, Johnson is due to be released from his term of imprisonment on October 6, 2020, less than one month from now.

The United States filed a response in opposition, arguing that the Court crafted Johnson's sentence aware of his conditions and of the Covid-19 outbreak, and that the sentencing factors do not support releasing him early (by one month). (Doc. 42, Response). Upon consideration of the parties' submissions, the record, 18 U.S.C. § 3582(c)(1)(A), and the applicable policy statement, the Court finds that Johnson's request for compassionate release is due to be granted.

## I.  Compassionate Release

Generally speaking, a district court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). "The authority of a district court to modify an imprisonment sentence is narrowly limited by statute." United States v. Phillips, 597 F.3d 1190, 1194–95 (11th Cir. 2010). The compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), provides one avenue for reducing an otherwise final sentence.

Following passage of the First Step Act, § 3582(c) now provides in relevant part:

**(A)** the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a)

> to the extent that they are applicable, if it finds that—
>
>> **(i)** extraordinary and compelling reasons warrant such a reduction …
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

Pursuant to its authority under 18 U.S.C. § 3582(c) and 28 U.S.C. § 994(t), the United States Sentencing Commission promulgated a policy statement governing the circumstances when compassionate release is appropriate. See U.S.S.G. § 1B1.13. The policy statement provides:

> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
>
> **(1)**   **(A)** Extraordinary and compelling reasons warrant the reduction; or
> **(B)** The defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;
> **(2)** The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
> **(3)** The reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13. The Sentencing Commission has not updated the policy statement since the First Step Act became law.

The commentary accompanying the policy statement instructs that "extraordinary and compelling reasons" exist under certain enumerated circumstances. U.S.S.G. § 1B1.13, cmt. 1. As relevant here, these circumstances include:

3

**(A) Medical Condition of the Defendant.—**

. . .

**(ii)** The defendant is--

**(I)** suffering from a serious physical or medical condition,

**(II)** suffering from a serious functional or cognitive impairment,

or

**(III)** experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

**(B) Age of the Defendant.—** The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

Id., cmt. 1(A), 1(B). Notably, a movant for compassionate release bears the burden of proving that a reduction in his or her sentence is warranted. United States v. Heromin, No. 8:11-cr-550-T-33SPF, 2019 WL 2411311, at *2 (M.D. Fla. Jun. 7, 2019); cf. United States v. Hamilton, 715 F.3d 328, 337 (11th Cir. 2013) (a movant under § 3582(c)(2) bears the burden of proving that a sentence reduction is appropriate).

## II.    Johnson Has Satisfied the Exhaustion Requirement

The United States concedes that Johnson, who is not in a BOP facility, has exhausted his administrative remedies as required by 18 U.S.C. § 3582(c)(1)(A). Response at 4. The United States further "concedes that jurisdiction exists in order for the Court to review Johnson's emergency motion for compassionate release." Id. Although a court has an independent obligation to ensure it has jurisdiction, every circuit court to have addressed the issue has held that § 3582(c)(1)(A)'s exhaustion requirement is non-jurisdictional (albeit a mandatory claims-processing rule when invoked). United States v.

Franco, — F.3d —, 2020 WL 5249369, at *1-2 (5th Cir. Sep. 3, 2020); United States v. Alam, 960 F.3d 831, 833 (6th Cir. 2020). The Court agrees with the reasoning in Franco and Alam, and finds that § 3582(c)(1)(A)'s exhaustion requirement, although a mandatory claims-processing rule, is not jurisdictional. Therefore, the Court accepts the United States' concession that Johnson has satisfied the exhaustion requirement and proceeds to the merits.

### III.   Johnson Has Shown Extraordinary and Compelling Reasons Warranting Compassionate Release

According to the Sentencing Commission's policy statement on compassionate release, the "Medical Condition of the Defendant" and the "Age of the Defendant" may each qualify as an extraordinary and compelling reason for a sentence reduction. U.S.S.G. § 1B1.13, cmt. 1(A), (B). Under Application Note 1(A), a defendant's medical condition makes him eligible for compassionate release if he is "suffering from a serious physical or medical condition" or "experiencing deteriorating physical or mental health because of the aging process" "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13, cmt. 1(A)(ii). Alternatively, the prisoner's age makes him eligible for compassionate release if he meets three criteria: (i) the inmate "is at least 65 years old"; (ii) the inmate "is experiencing a serious deterioration in physical or mental health because of the aging process"; and (iii) the inmate "has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." Id., cmt. 1(B).[2]

---

[2]      Notably, unlike Application Note 1(A)(ii), Application Note 1(B) does not require an old-age defendant to show that his or her deteriorating health has "substantially diminishe[d] the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."

With respect to Johnson's medical conditions, the United States concedes that one or more of Johnson's conditions qualifies as an extraordinary and compelling reason for compassionate release. Response at 4, 8-10. Johnson, who is 80 years old, suffers from the following illnesses: type 2 diabetes, stage 3 chronic kidney disease, high blood pressure, a heart murmur, post-traumatic stress disorder (PTSD), depression, a lower back injury, a right leg injury, sleep apnea, and vision loss in his left eye. See Emergency Motion at 3-5; Response at 6; PSR at ¶¶ 48-61. Johnson takes six units of insulin two times a day, furosemide 40 mg (a "water pill"), cyanocobalamin 1000 mcg, and Losartan 100 mg to treat his conditions. Id. at ¶ 49, 50. According to the Centers for Disease Control (CDC), type 2 diabetes mellitus and chronic kidney disease each increase the risk of severe infection from Covid-19.[3] Additionally, the CDC advises that having high blood pressure may increase the risk of serious illness from coronavirus. The United States concedes that because Johnson has type 2 diabetes and chronic kidney disease, and because of the heightened risks that Covid-19 poses for people with these conditions, he has demonstrated extraordinary and compelling circumstances for purposes of U.S.S.G. § 1B1.13, cmt. 1(A)(ii).

Additionally, Johnson qualifies for compassionate release based on his age, pursuant to U.S.S.G. § 1B1.13, cmt. 1(B). Johnson obviously meets the first and third criteria: he is 80 years old and has served seven of the eight months (87.5%) of his prison sentence. As discussed above, Johnson also meets the second requirement – that he is experiencing a serious deterioration in physical or mental health because of the aging process. Again, the record shows that Johnson suffers from type 2 diabetes, stage 3

---

[3]     https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

chronic kidney disease, high blood pressure, a heart murmur, a lower back injury, a right leg injury, sleep apnea, and vision loss in his left eye. See Emergency Motion at 3-5; Response at 6; PSR at ¶¶ 48-61. Thus, the record shows that Johnson suffers from serious age-related physical decline.

The Covid-19 pandemic simply accentuates Johnson's need for compassionate release. Of course, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020). However, Covid-19 poses especially grave risks for older individuals like Johnson. According to the Centers for Disease Control (CDC), the risk of death from Covid-19 increases with age, with eight of ten Covid-19 deaths occurring among those aged 65 and older.[4] And, the risk of serious complications from Covid-19 is further heightened for those of any age who, as discussed above, suffer from certain health conditions, such as type 2 diabetes and chronic kidney disease. On this record, the Court concludes that given Johnson's age and medical conditions, the dangers posed to him in particular by Covid-19 constitute extraordinary and compelling reasons to support a request for compassionate release. See U.S.S.G. § 1B1.13, cmt. 1(A), 1(B).

Although the United States concedes that Johnson has shown extraordinary and compelling reasons, it argues that Johnson is not entitled to relief because the Court was aware of Johnson's medical conditions and the Covid-19 pandemic when it sentenced him.

---

[4]      https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html

Response at 8-10. That the Court was aware of these circumstances is not a bar to compassionate release. The policy statement's accompanying commentary provides:

> **Foreseeability of Extraordinary and Compelling Reasons.--** For purposes of this policy statement, an extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of imprisonment. Therefore, the fact that an extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court does not preclude consideration for a reduction under this policy statement.

U.S.S.G. § 1B1.13, cmt. 2. Thus, Application Note 2 forecloses the argument that a court cannot grant compassionate release based on circumstances that were anticipated at the time of sentencing. Moreover, the Court sentenced Johnson with the intention that he would be promptly designated for the BOP medical facility in Butner, North Carolina. Judgment at 2. That designation never came to fruition, presumably because of the precautions implemented by the BOP in response to Covid-19. Instead, since his sentencing, Johnson has remained at the Baker County Detention Center, where staff have struggled to help Johnson properly manage his health conditions. See Emergency Motion at 3-4.

    In light of these considerations, the Court finds that Johnson has demonstrated extraordinary and compelling reasons warranting consideration for compassionate release.

### IV.    Johnson Likely is Not a Danger to the Community and the § 3553(a) Factors Support a Reduction in Sentence

    The fact that Johnson has demonstrated extraordinary and compelling reasons permitting his compassionate release does not end the analysis. The Court must also consider the factors identified in 18 U.S.C. § 3553(a) and determine whether it can

conclude that "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)," U.S.S.G. § 1B1.13(2), and whether a reduction of his sentence is consistent with the Sentencing Commission's policy statements, 18 U.S.C. § 3582(c)(1)(A).

Upon review of the record, having considered the § 3553(a) factors, the Court concludes that Johnson likely will not be a danger to the safety of any other person or to the community under the conditions of supervised release. U.S.S.G. § 1B1.13(2). In reaching this conclusion, the Court has carefully considered Johnson's criminal record. As set forth in the Indictment, the Plea Agreement, and the PSR, almost 30 years ago in 1992, Johnson was convicted in the United States District Court for the Eastern District of New York of attempted murder, two counts of assault, and one count of using a firearm during a crime of violence. See Plea Agreement at 16; PSR at ¶ 31. In 1989, while working at a Navy yard in Brooklyn, Johnson went into the office of his supervisor (Floyd Roberts), pulled out a shotgun, and aimed it at him. PSR at ¶ 31. A chase ensued during which Johnson fired at Roberts but missed. Another officer (Carl Peach) intervened in an effort to help Roberts, and a struggle for the weapon followed. During the struggle, Johnson fired the weapon three more times. The first two shots missed, but the third shot struck Roberts in the left knee and gave Peach two superficial pellet wounds in his right leg. The district court sentenced Johnson to 10 years in prison. He was released in 2000. Id.

According to the PSR, the 1989 offense was Johnson's only encounter with the criminal justice system other than the instant case. During the 20 years between his release from prison and the instant offense, Johnson lived an otherwise law-abiding life.[5]

---

[5]   Because of the age of the conviction for the 1989 offense, Johnson's criminal history score was zero and his Criminal History Category was I. PSR at ¶¶ 32, 33.

In the instant case, Johnson was arrested and charged after he was found to be in possession of several firearms, in violation of 18 U.S.C. § 922(g)(1). Agents for the Bureau of Alcohol, Tobacco, and Firearms (ATF) found Johnson to be in possession of 100 rounds of CBC 9mm Luger ammunition, a Kel-Tech 9 mm pistol, a Colt .25 caliber pistol, a 12-gauge shotgun, a Marlin .22 caliber rifle, and an Anderson .556 caliber rifle with a 100-round magazine, which was loaded with 73 rounds of ammunition. Plea Agreement at 15-16.[6] Johnson pleaded guilty to the offense and accepted responsibility. Each of these weapons (and others) have since been confiscated. PSR at ¶¶ 3, 5.

Although Johnson's criminal history is of concern, the Court is of the view that the conditions of supervised release (which already include a period of home confinement), can control the risk that he will reoffend. Among other things, Johnson will be required to report regularly to a probation officer, to truthfully answer any inquiries by the officer, and to submit to random visits. Additionally, Johnson must permit the probation officer to search his person, residence, vehicle, place of business, and other locations within his control. Johnson will know that if he reoffends while on supervised release, he will be subject to the revocation of his supervised release and reimprisonment. There is no indication that Johnson has incurred any disciplinary infractions during his time at the Baker County Detention Center, suggesting that he may do well under the supervision of the United States Probation Office. The Court also notes that even if it were to deny compassionate release, Johnson is due to be released from incarceration in less than a

---

[6]    The PSR also states that Johnson "made several general threats" against a person named C.S., who had fired Johnson from his job at a medical transportation company in early 2020. PSR at ¶¶ 7, 68. Fortunately, Johnson did not follow through on those threats.

month. Johnson, at age 80 and with several medical conditions, is no more a danger now than he will be on October 6, 2020, when he is due to be released from custody.[7]

The Court further concludes that consideration of the § 3553(a) factors supports a finding that reducing Johnson's sentence is consistent with the Sentencing Commission's policy statement. Johnson has completed all but one month – nearly 90% – of his term of imprisonment. He is 80 years old and in declining health. Johnson served in the United States Army from 1958 to 1978, receiving an honorable discharge after achieving the rank of Sergeant First Class and Chief Warrant Officer. PSR at ¶¶ 73, 74. Between 1965 and 1974, during the midst of the Vietnam War, Johnson completed several tours of duty in Vietnam, Korea, and Japan. Id. at ¶ 44. He received several medals, badges, citations, and campaign ribbons, including the Bronze Star Medal, for his service in Vietnam. Id. at ¶ 74. Johnson suffers from PTSD and depression as a result of his experiences during the Vietnam War. Id. at ¶ 57-59. Having served his country well, it is not this Court's intention that he should contract coronavirus while in prison.

Section 3553(a) requires a sentencing court to consider, among other factors, the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public. 18 U.S.C. § 3553(a)(2). It also requires the sentencing court to consider "the nature and circumstances of the offense and the history and characteristics of the defendant," §

---

[7]     Statistics also show that age exerts a powerful influence on the recidivism rate, which declines as offenders get older. The Effects of Aging on Recidivism Among Federal Offenders, at 3, 23, United States Sentencing Commission (2017), available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20171207_Recidivism-Age.pdf. According to the Sentencing Commission, offenders aged 65 and older, like Johnson, are the least likely to be rearrested, reincarcerated, or reconvicted. Id. at 23. Granted, however, this point carries a bit less force here, where Johnson reoffended at the age of 80.

3553(a)(1), the sentencing range established by the sentencing guidelines, § 3553(a)(4)(A), and the need to avoid unwarranted sentencing disparities, § 3553(a)(6). In view of all the § 3553(a) factors, the Court finds that reducing Johnson's term of imprisonment by one month to time served is consistent with the applicable policy statements issued by the Sentencing Commission.

### V.      Conclusion

Upon review of the parties' arguments, the record, and the applicable law, the Court concludes that Johnson qualifies and is appropriate for compassionate release.

Accordingly, it is hereby **ORDERED**:

1.  Defendant D.K. Johnson's pro se "Emergency Motion to Amend DK Johnson's Sentencing for Compelling Circumstances" (Doc. 39), construed as an Emergency Motion for Compassionate Release, is **GRANTED**.

2.  The Court reduces Johnson's term of imprisonment to **TIME SERVED**. Upon his release from custody, Johnson will begin serving a term of supervised release of **three years**. Judgment at 3. Johnson will be subject to the same conditions of supervised release as set forth in the Judgment, except with the following modification: Johnson shall participate in the Home Detention program for a period of **SEVEN (7) MONTHS** rather than a period of six (6) months.

3.  The Court appoints the Office of the Federal Public Defender to assist Johnson in coordinating with the United States Probation Office to arrange a release plan.

4.  This order is stayed for **up to five days**, for the verification of Johnson's residence and/or establishment of a release plan, to make appropriate travel arrangements, and to ensure the defendant's safe release. Johnson shall be released as soon as

a residence is verified, a release plan is established, appropriate travel arrangements are made, and it is safe for the defendant to travel. There shall be no delay in ensuring travel arrangements are made. If more than five days are needed to make appropriate travel arrangements and ensure Johnson's safe release, the parties shall immediately notify the court and show cause why the stay should be extended.

5. The Court recommends that jail officials at the Baker County Detention Center place Johnson in quarantine pending, and in preparation for, his release, both to ensure his safety and that of the community upon his release.

   **DONE AND ORDERED** at Jacksonville, Florida this 14th day of September, 2020.

**MARCIA MORALES HOWARD**
United States District Judge

lc 19

Copies:

Counsel of record
Office of the Federal Public Defender
Defendant D.K. Johnson
United States Marshals Service
United States Probation Office
United States Bureau of Prisons
Baker County Detention Center, Attn: Sheriff Scotty Rhoden